```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
                      Richmond Division
```

UNITED STATES OF AMERICA

v.                                       Criminal No. 3:10cr21-01

ARTURO MENDOZA, JR.

## MEMORANDUM OPINION

This matter is before the Court on ARTURO MENDOZA'S MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO THE FIRST STEP ACT AND THE CHANGES IN THE COMPASSIONATE RELEASE STATUTE AND 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 162) and the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 174). Having considered the Motions, the United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 175), the Defendant's Reply to Government's Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 185), the Joint Status Report (ECF No. 179), the Second Status Report (ECF No. 181), and the position of the Probation Office (ECF No. 171), the Presentence Report (ECF No. 166), and the file, ARTURO MENDOZA'S MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO THE FIRST STEP ACT AND THE CHANGES IN THE COMPASSIONATE RELEASE STATUTE AND 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 162) filed *pro se* by the defendant and the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 174) will be denied.

**BACKGROUND**

Mendoza's conviction for attempting to possess with intent of distribute five kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. § 846, arose out of circumstances on October 6, 2019, when he and his co-defendants attempted to purchase five kilograms of cocaine hydrochloride. They had with them $147,520 to be used to purchase the cocaine hydrochloride. The defendant was arrested and there was a search of his residence and additional proceeds were discovered. In particular, caches of currency in the amount of $3,000 and $6,600, respectively, were discovered. For purposes of relevant conduct, Mendoza was held accountable for 10.3 kilograms of cocaine hydrochloride. Mendoza's Criminal History was Category IV created by a 2002 conviction for using a firearm in connection with a robbery and the robbery and for a 2007 conviction of possession with intent to manufacture, sell, and distribute cocaine. However, Mendoza was accorded Criminal History Category VI because he was regarded as a career offender by virtue of the aforementioned convictions. With an adjusted offense level of 32 and a Criminal History Category VI, the suggested guidelines sentencing range was 262 months to 327 months. The statutory punishment was a minimum of ten years to a maximum of life imprisonment. The defendant moved for downward departure and for downward variance. The downward departure motion was

denied. The downward variance motion was granted and the Mendoza was sentenced to a period of imprisonment for 240 months, 58 months below the advisory guideline range.

Mendoza is incarcerated at FCI Petersburg Low and is scheduled for release on September 12, 2024. While in prison, Mendoza has completed the Court ordered drug education program and, in his words, "has participated in various academic, job training, computer skills and personal health courses to better prepare himself for his eventual release into the community, as indicated on the Initialized Reentry Plan." (ECF No. 174, p. 30). An examination of the Initialized Reentry Plan establishes the accuracy of the assertion that Mendoza has participated in the programs described. Additionally, he has completed his GED. Mendoza alleges that he is more likely to suffer severe fatal of COVID-19 because of two health conditions, a history of hypertension and a diagnosis as pre-diabetic. In addition, he argues that his history and characteristics and the rehabilitation efforts which are described above have warranted his release. In particular, he argues that the offense of conviction is a first-time drug offense for which he has served more than ten years in prison. The Presentence Report, however, that Mendoza has another drug conviction that predated this one (ECF No. 126, ¶ 21: conviction for possession with intent to manufacture, sell and

3

distribute cocaine. It is also argued that Mendoza is a model prisoner, and over the course of ten years he has incurred few disciplinary actions, two of which occurred within the past year.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The policy statements

are not binding but are informative and may be considered. United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility." United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020); United States v. White, ___ F. Supp.3d ___, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020)

1. **Particularized Susceptibility**

The defendant has established that he suffers from hypertension and that his A1C level (6.1%) qualifies as pre-diabetic. Hypertension and diabetes are conditions that the CDC recognizes as presenting added risk of exacerbation of COVID-19 if contracted. However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement because identified risk

factor conditions must be serious to constitute extraordinary and compelling reasons. It appears from the record that the conditions on which Mendoza bases his motion are "chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020). In addition, Mendoza has not established that his medical needs cannot be met while incarcerated and, indeed, the medical records filed herein outline that he receives regular medical care, adjustment of his medications, and testing related to the chronic health issues.

Moreover, Mendoza has received the Pfizer BioNTech vaccine. Thus, his risk of contracting COVID-19 is reduced as is the risk of serious consequences if the virus is contracted. Further, because the vaccine mitigates the risk of contracting COVID-19, the defendant must provide other evidence to establish an extraordinary and compelling reason for compassionate release based upon his concern about contracting the virus. United States v. Stoddard, No. 1:14cr76, 2021 WL 2379568, at *5 (E.D. Va. Va. June 9, 2021); United States v. Cabaase, No. 2:10cr57, 2021 WL 2346106, at *4 (E.D. Va. June 8, 2021); United States v. Jones, No. 3:19cr105, 2021 WL 217157, at *5 (E.D. Va. Jan. 21, 2021). Smith has been vaccinated, and he has not made the showing that he

nonetheless suffers from any extraordinary condition that is terminal or severely limits his ability to function in a correctional setting.

In sum, Mendoza has not met the particularized susceptibility risk facet of the applicable test.

### 2. Particularized Facility Risk

Nor has Mendoza met the particularized facility risk component of the appropriate test.  His motion cites press releases and information respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at FCI Petersburg Low, the defendant's facility of incarceration.  Further, the record reflects that, at the time of the filing of the Government's papers, FCI Petersburg Low had no active case of COVID-19 among inmates, no active cases of COVID-19 among staff, and that the facility had reported no COVID-19 caused deaths.  Further, the facility reports a high level of vaccinations among both inmates and staff.  In addition, all inmates who have tested positive are being appropriately treated and isolated in accord with the appropriate CDC guidelines that have been adopted by the Bureau of Prisons.

On this record, Mendoza has not met the particularized facility component of the applicable test.

### 3. Assessment Under 18 U.S.C. § 3553(a)

But, even if Mendoza had met the particularized risk assessment and the particularized facility assessment (which he has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community. The defendant argues that he is not a danger to the community largely because: (1) his offense of conviction involved neither firearms nor violence; (2) he is incarcerated in a facility for low risk offenders; and (3) has been rehabilitated, as evidence by the courses and programming in which he has engaged while in prison and he has strong community support.

It is correct that Mendoza's offense of conviction did not involve firearms or violence, that he is in a low risk facility, that he has put his time in prison to productive use and has made steps toward rehabilitation and has good support at home. However, the offense of conviction involved a very large quantity of drugs, 10.3 kilograms of powder cocaine, a most serious offense that presented serious danger to the community. His criminal history is serious as well, with a conviction for robbery and two drug convictions (separated by only four years). Drug trafficking in large quantities presents serious danger to the community and

8

repeated criminal conduct proves a propensity for recidivism. On this record, it cannot be said that Mendoza's efforts at rehabilitation, commendable though they be, overcome the serious offense conduct and Mendoza's criminal record. The current sentence is necessary to protect the public, to deter the defendant, and to provide respect for the law. In sum, the sentence is sufficient, but not greater than necessary, to achieve the aims of 18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons set forth above, ARTURO MENDOZA'S MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO THE FIRST STEP ACT AND THE CHANGES IN THE COMPASSIONATE RELEASE STATUTE AND 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 162) and the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 174) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 20, 2021